**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AJA J.,**[1]

          **Plaintiff,**

                               **Civil Action 2:22-cv-3264**
    **v.**                           **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

          **Defendant.**

**<u>OPINION AND ORDER</u>**

      Plaintiff, Aja J., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits.  This matter is before the Court for on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 8).  For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors (ECF No. 10) and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

      Plaintiff protectively filed her application for benefits on January 22, 2018, alleging that she has been disabled since April 8, 2016.  (R. at 233-35.)  Plaintiff's application was denied initially in August 2018 and upon reconsideration in January 2019.  (R. at 106-40.)  Plaintiff

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

sought a *de novo* hearing before an administrative law judge. (R. at 162-78.) Administrative Law Judge Jeffrey Hartranft (the "ALJ") held two telephone hearings, the first on August 14, 2020, with a supplemental hearing held on April 6, 2021, due to objections to the vocational expert ("VE") testimony. (R. at 44-64, 65-105.) Plaintiff, who was represented by counsel, appeared and testified at the first hearing, but only appeared at the supplemental hearing. (*Id.*) The VE appeared and testified at both hearings. (*Id.*) On July 13, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14-43.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.)

## II.   RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.   ADMINISTRATIVE DECISION

On July 13, 2021, the ALJ issued his decision. (R. at 14-43.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30,

2023. (R. at 20.)  Then, at step one of the sequential evaluation process,[2] the ALJ found that

Plaintiff has not engaged in substantial gainful activity since April 8, 2016, the alleged onset

date.  (*Id.*)  The ALJ found that Plaintiff has the following severe impairments: syncope;

migraines; fibromyalgia; central sensitization disorder; chronic fatigue syndrome; cervical

degenerative disc disease; obesity; bipolar disorder and posttraumatic stress disorder.  (R. at 21.)

The ALJ further found that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments described in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except  she could lift and/or carry 20 occasionally and 10
> pounds frequently; she could sit for 6 hours in an 8-hour workday and stand and/or
> walk for 6 hours in an 8-hour workday; she could push and pull as per her ability
> to lift and/or carry; she could frequently climb ramps and stairs; she should avoid
> climbing ladders, ropes, or scaffolds; she could frequently stoop, kneel, crouch, and
> crawl; she should avoid all exposure to hazards, such as unprotected heights,

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at
any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully
considered, the sequential review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?
2.      Does the claimant suffer from one or more severe impairments?
3.      Do the claimant's severe impairments, alone or in combination, meet or
        equal the criteria of an impairment set forth in the Commissioner's Listing of
        Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.      Considering the claimant's residual functional capacity, can the claimant
        perform his or her past relevant work?
5.      Considering the claimant's age, education, past work experience, and residual functional
        capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

working around hazardous machinery, and commercial driving; and she could frequently handle and finger with the bilateral upper extremities.

(R. at 27.)

At step four of the sequential process, relying on the VE's testimony, the ALJ determined that Plaintiff has no past relevant work given she was given accommodations with her past employment. (R. at 35.)  Further relying on the VE's testimony, the ALJ concluded at Step 5, that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a document specialist, charge clerk, or copy examiner.  (R. at 35-36.)  He therefore concluded that Plaintiff has not been disabled since April 8, 2016.  (R. at 36-37.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices the claimant on the merits or deprives the

claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc.*

*Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

Plaintiff sets forth one statement of error:  that the RFC is not based on substantial

evidence because the ALJ made no accommodations for Plaintiff's migraines headaches or

fibromyalgia, conditions the ALJ had found to be severe.  (ECF Nos. 10 and 12).  In response,

the Commissioner contends that the ALJ developed an RFC that appropriately accommodated

Plaintiff's physical impairments and was clearly supported by substantial evidence.  According

to the Commissioner, Plaintiff's argument is nothing more than a request that the Court re-weigh

evidence.  The Court agrees that the ALJ's RFC determination is supported by substantial

evidence.

As a preliminary matter, a claimant's RFC is "the most [she] can still do despite [her]

limitations." 20 C.F.R. § 404.1545(a)(1).  As this Court has explained:

> The RFC "circumscribes 'the claimant's residual abilities or what a claimant can
> do, not what maladies a claimant suffers from—though the maladies will certainly
> inform the ALJ's conclusion about the claimant's abilities.'" *Johnson v. Comm'r*

> *of Soc. Sec.*, No. 08-CV-14363, 2010 WL 520725, at *7 (E.D. Mich. Feb. 8, 2010)
> (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)). This
> means that "'[a] claimant's severe impairment may or may not affect his or her
> functional capacity to do work. One does not necessarily establish the other.'"
> *Johnson*, 2010 WL 520725, at *7 (quoting *Young v. Comm'r of Soc. Sec.*, 2004 WL
> 1765480, at *5 (E.D. Mich. 2004)). "'The regulations recognize that individuals
> who have the same severe impairment may have different [residual functional
> capacities] depending on their other impairments, pain, and other symptoms."
> *Johnson*, 2010 WL 520725, at *7 (alteration in original) (quoting *Griffeth v.
> Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007)). "'Put another way,
> the existence of a severe impairment says nothing as to its limiting effects.'" *Hicks
> v. Berryhill*, No. 3:17-CV-176-HBG, 2018 WL 2074181, at *4 (E.D. Tenn. May 3,
> 2018) (quoting *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV-640, 2014 WL
> 3845951, at *9 (S.D. Ohio Aug. 5, 2014)). Importantly, Plaintiff "bears the burden
> to show that an impairment invokes work-related limitations." *Hicks*, 2018 WL
> 2074181, at *4 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir.
> 2003)).

*Ray v. Commissioner of Soc. Sec.*, No. 2:20-CV-1897, 2021 WL 235828, at *4 (S.D. Ohio Jan.

25, 2021*), report and recommendation adopted sub nom. Ray v. Comm'r of Soc. Sec.,* No. 2:20-

CV-1897, 2021 WL 4172926 (S.D. Ohio Sept. 14, 2021).

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20

C.F.R. §§ 404.1527(d), 416.927(d). Nevertheless, substantial evidence must support the

Commissioner's RFC finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D.

Ohio June 18, 2010). The ALJ determines a claimant's RFC based on relevant evidence in the

record, including objective medical evidence, medical opinions, other medical evidence,

evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. §

404.1545(a)(1)-(5).

In this case, the ALJ acknowledged Plaintiff's subjective complaints relating to her

migraines and fibromyalgia, discussing as follows:

At the hearing, [Plaintiff] testified she was unable to work because her migraine headaches were debilitating because she needed to be able to see and focus and use on a computer screen and also be in a certain type of lighting in those environments. The stress along with migraine headaches have caused issues with productivity on the job as well as with her attendance. She indicated she got at least 3 to 5 migraines a week. Her fibromyalgia and chronic fatigue syndrome have also posed major issues with sitting, as it hurt so much. She also testified she had been given accommodations while working, including wearing sunglasses and using footstools to keep her legs from swelling but none had helped in the long run.

(R. at 27.)

The ALJ also supported his findings by citing various medical records relating to

Plaintiff's migraine headaches and fibromyalgia as follows:

The evidentiary record also documents [Plaintiff]'s treatment for intractable migraine and without status migrainosus (Exs. 1F/2; 2F/1; 4F/2; 7F/4; 27F/86). Her migraines are accompanied by bilateral frontal and temporal throbbing pain, nausea, vomiting, photophobia and phonophobia. Additionally, while her migraines were consistently described by doctors as without aura, [Plaintiff] frequent reported an orange aura and black halo usually preceded her migraines (Exs. 1F/5; 5F/2; 7F/4; 14F/30). She has treated her migraine headaches with appropriate prophylactic and abortive medications. While NSAIDS, Triptans, Propranolol, Elavil and Effexor proved ineffective in (Exs. 1F/8, 16; 23F/52), she has experienced some degree of success with Topamax, Midrin, Naratriptan and Aimovig (Exs. 1F/5-6, 8, 16; 23F/52; 27F/89-90) and her doctor placed a prior authorization request for Botox injections (Exs. 1F/16; 23F/52). [Plaintiff] reported experiencing five headaches a week despite her medications on May 21, 2018. Her headaches typically occurred in the mid-frontal area and were accompanied by a yellow/orange foggy aura and feeling of disorientation (Ex. 5F/1). [Plaintiff] reported having three to five headaches per week on July 17, 2018. She also related that she had tried every medication possible to resolve her headaches and nothing had worked except Midrin, which helped somewhat. She also indicated marijuana helped with her nausea and aura (Ex. 7F/4). November 26, 2018 treatment notes show she was benefitting from Aimovig, as she had been averaging 15-17 migraines per month prior to starting Aimovig and was now only having 8-10 migraines per month. While she denied any reduction in the intensity of her migraines, she indicated Naratriptan remained effective as an abortive medication, but was only getting 6 per month. Her Aimovig was increased to 140 mg per month and her Naratriptan and magnesium continued (Ex. 27F/89-90). [Plaintiff] reported her migraines, while ongoing, were decreased in severity with Aimovig on June 3, 2019 (Ex. 14F/8). February 12, 2020 notes show [Plaintiff] was placed on Emgality

after it was determined Aimovig was no longer helping her (Ex. 14F/30).

Additionally, [Plaintiff] has been diagnosed with and treated for fibromyalgia, chronic fatigue syndrome and central sensitization disorder (Exs. 7F/6, 103; 23F/118; 24F/149). She has endorsed a variety of symptoms related to these conditions, including fatigue, sleep disruption, memory loss, concentration difficulty, weakness, lower extremity edema, headaches, night sweats, loss of energy, loss of strength, arthralgias, myalgias, brain fog, (Exs. 1F/5; 23F/52, 99; 4F/5-6; 5F/2; 7F/2; 14F/6). [Plaintiff] reported having a lot of fatigue and inflammation in her body at her May 21, 2018[,] consultative examination. She also indicated holding her arms overhead was difficult as was putting on certain clothes if she had to pull them on with a lot of strength. Additionally [Plaintiff] indicated that just getting up and driving to work caused her fatigue. She appeared comfortable in the sitting and supping positions but was slow to change positions. Her recent and remote memory for medical events was good and she was able to follow simple commands and instructions without difficulty. There was trace edema noted in her ankles and her hands and feet were extremely cold with profuse diaphoresis (Ex. 5F). [Plaintiff]'s fibromyalgia, chronic fatigue and central sensitization syndrome was confirmed during a September 13, 2018[,] Mayo Clinic evaluation (Ex. 24F/149). [Plaintiff] was in no acute distress, well-nourished and well developed on June 3, 2019. Moreover, she reported only intermittent pain and burning in her upper arms and tingling pain in her lower legs and musculoskeletal examination was grossly normal (Ex. 14F/8-9). While she reported only minimal improvement with Tizanidine on June 11, 2020, she indicated Cymbalta was helping her symptoms somewhat. She denied gait disturbance, joint pain, joint stiffness, joint swelling and muscle pain and neurologic numbness, tingling and weakness. She was in no acute distress. While there was some tenderness to palpation of the bilateral trapezius and paraspinal musculature in the cervical and thoracic regions range of motion was normal. Additionally, neurologic examination was within normal limits (Ex. 19F).

(R. at 28-29.)

In challenging the ALJ's RFC formulation, Plaintiff merely reiterates her diagnoses and subjective statements regarding her symptoms. But "diagnoses alone say nothing of the severity of a claimant's symptoms or any resulting functional limitations." *Barajas v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-11219, 2021 WL 4099250, at *4 (E.D. Mich. Aug. 10, 2021), *report and recommendation adopted sub nom. Barajas v. Comm'r of Soc. Sec.*, No. 20-CV-11219, 2021

8

WL 4078666 (E.D. Mich. Sept. 8, 2021) (citing *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.")).  Further, an ALJ is not "required to blindly accept a claimant's testimony regarding her symptoms." *Id*. (citing *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992)).  Notably, Plaintiff does not dispute the ALJ's discussion of the medical records cited nor link her diagnoses and symptoms to any specifically identified functional limitations.  Instead, she offers only self-serving interpretations based on what she views as the obvious impact these conditions would have on her ability to perform basic work activities.  But, to the extent that Plaintiff suggests the medical evidence of record is open to another interpretation, favorable to her, the Court declines to reweigh the evidence.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

At best, Plaintiff offers only conclusory assertions that her impairments impacted her ability to perform basic work activities.  For example, Plaintiff contends that the RFC should have addressed the potential for off task periods or concentration and attention limitations.  But the ALJ explicitly considered the extent to which Plaintiff's symptoms affected her ability to function in the workplace, and he concluded, based on the record, that despite her migraines and fibromyalgia, she could still perform sedentary work with certain additional limitations, including the ability to wear sunglasses while working.  He explained why the objective medical findings and expert opinions supported these findings.  Moreover, as Plaintiff fails to acknowledge, he also explained why the State Agency medical consultants' opinions describing a lesser limitation to light work were unpersuasive.  (R. at 32.)  In the face of the ALJ's comprehensive discussion, Plaintiff offers both pure speculation and the utterly baseless

accusation that the ALJ "intentionally ignored [her] migraine headaches and her fibromyalgia when crafting the RFC because he knew that any adequate accommodations for these impairments would be work preclusive and he would be forced to awar[d] [her] benefits."  (ECF No. 10 at 15.)  Additionally, Plaintiff fails to acknowledge the inconsistency between her claim that the ALJ ignored her migraine headaches and her admission that a stipulation that she be able to wear sunglasses "can be said to be linked" to that condition.  (*Id*. at 10.)  Thus, while Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ's explanation enjoys substantial support in the record and Plaintiff has not demonstrated otherwise. *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm."))

In short, it was Plaintiff's burden to convince the ALJ that her migraine headaches and fibromyalgia mandated stricter limitations. She did not do so.  Accordingly, Plaintiff has shown no reversible error.

## VI.  CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 10) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**Date:**    <u>**July 13, 2023**</u>                            <u>s/ *Elizabeth A. Preston Deavers*</u>
                                                         **ELIZABETH A. PRESTON DEAVERS**
                                                         **UNITED STATES MAGISTRATE JUDGE**

11